**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                     No. 1:19-cr-00940-JCH

BRANDON CHARLEY,

     Defendant.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Government's opposed "Omnibus Motion *in Limine*" (ECF No. 110) and the Government's "Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b)" (ECF No. 101) and Defendant's Response to the Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) (ECF No. 129).

### A.    BACKGROUND

According to the Government, Defendant murdered a man named in these proceedings as "John Doe." Both men grew up in Prewitt, New Mexico. A feud between the men's families began in the early 2000s, and on several occasions violence has erupted in the community. On June 24, 2018, Defendant allegedly killed Doe from roughly fifty yards. Investigating officers never found a gun, but did recover .357-caliber casings at the scene. On August 21, 2018 Defendant was charged by criminal complaint and then eventually indicted in March 2019. On November 20, 2019, a federal grand jury returned a two-count superseding indictment charging Defendant with first-degree murder in Indian country in violation of 18 U.S.C. §§ 1153 and 1111 (Count I) and using/carrying a firearm

during and in relation to a crime of violence and during of the course of that crime causing death through discharge of a firearm in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j)(1) (Count II). The Court will present the pertinent factual background in the sections that follow.

## B.   OMNIBUS MOTION *IN LIMINE*

### 1. Self-Defense and Defense-of-Another

On August 13, 2019, Defendant filed a "Notice of Defenses," indicating that he may present at trial the defenses of (1) defense-of-another and (2) self-defense. *See* ECF No. 95. The Government responded by moving *in limine* to exclude from trial "any claim of self-defense or defense of others from *voir dire*, opening statement, witness examinations or otherwise injecting the issue into trial." ECF No. 110 at 4-5. Defendant responded that a ruling on this issue would be premature because Defendant will testify at trial in his own defense and that his testimony will show that his evidence meets the threshold for a self-defense or defense-of-another instruction. Defendant proposes allowing counsel to inject the self-defense or defense-of-another issue at trial and for the Court to reserve ruling on the instruction until after the close of evidence.

"Generally, a defendant must make a threshold showing on the elements of an affirmative defense prior to the presentation of the evidence to the jury." *United States v. Dodge*, No. 1:16-CR-1697-WJ, 2018 WL 3352965, at *1 (D.N.M. July 9, 2018) (citing *United States v. Bailey,* 444 U.S. 394, 412-15 (1980)) (other citation omitted). "A district court can assess the sufficiency of a defendant's affirmative defense before it is presented to a jury as part of its gate-keeping responsibilities." *United States v. Gottesfeld*, 319 F.

Supp. 3d 548, 553 (D. Mass. 2018) (citing *United States v. Portillo–Vega*, 478 F.3d 1194, 1197 (10th Cir. 2007)). "It can review the sufficiency of defendant's proffered evidence before trial, during trial or after the close of evidence before an instruction on the defense is given to the jury." *Gottesfeld*, 319 F. Supp. 3d at 553-54 (citing *United States v. Graham*, 663 Fed. App'x 622, 625–26 (10th Cir. 2016) and *Portillo–Vega*, 478 F.3d at 1202)).

When a defendant's proposed pretrial defense requires the district court to resolve factual issues, the court must accept as true the defendant's proffered evidence. *See United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006) ("For purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted.") (internal quotation marks omitted). In terms of the pretrial evidentiary "threshold showing" a defendant must make to be entitled to develop an affirmative defense at trial, the defendant's evidentiary proffer must

> meet the minimum standard as to each element of the defense, so that if a jury finds it to be true, it would support the defense. In so doing, the defendant must present more than a scintilla of evidence that demonstrates that he can satisfy the legal requirements for asserting the proposed defense.

*United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002) (citations and internal quotation marks omitted.) "[W]here the evidence proffered … is insufficient as a matter of law to support the affirmative defense a pre-trial ruling precluding the presentation of the defense at trial is appropriate." *Id.* A defendant may proffer evidence, through representations of counsel, which would support a theory of self-defense or defense of others. *See Dodge*, 2018 WL 3352965, at *1; *Graham*, 663 F. App'x 622, 625 (10th Cir. 2016) ("the court

may rule on the adequacy of the defense based on a pretrial proffer."); *Portillo-Vega*, 478 F.3d at 1196.

In a previous motion hearing, Mr. Gorence, counsel for Defendant, noted that over five detention hearings before Judges Parker and Briones "a lot of the evidence has been somewhat developed" as a result of those hearings. ECF No. 135, 11:4-10. Defendant likewise said in his response brief to the Government's motion *in limine* that "[t]he facts that support Mr. Charley's" version of events were "set forth in detail in the detention hearings." ECF No. 122, 3. Accordingly, the Court will rely on testimony and proffers by counsel developed at those hearings and will recite the facts alleged by Defendant, fully crediting Defendant's version of the facts as true. *See Toledo*, 739 F.3d at 568.

Factual Background Presented in Defendant's Favor

On the afternoon of June 24, 2018, "C.M." drove her friends John Doe (the victim in this case) and "C.Y." to a remote overlook near Prewitt, New Mexico where the three drank alcohol and had sex. C.M. eventually decided to leave. So she drove away, leaving Doe and C.Y. on the overlook. Around 2:00 p.m., Defendant and his cousin-in-law, Edward Two Eagles, were driving in the area in a Chevrolet Tahoe. They spotted Doe and C.Y. near the side of the road and decided to stop the Tahoe.

Because of apparent bad blood between Defendant's and Doe's families, Defendant aggressively confronted Doe. Doe fled on foot, leaving C.Y. alone with Defendant and Two Eagles and C.Y. for about 20-30 minutes. According to Defendant, C.Y. was "dazed, confused and bleeding from the head," when they encountered her. ECF No. 99, 10:25 – 11: 1. In a later investigation, Two Eagles reported to an investigator that he and Defendant

were sitting on a hill from a distance and saw Doe beating up C.Y. Counsel for Defendant also proffered that Defendant heard C.Y. say that she had been raped. *See* ECF No. 135 at 15:24-25.

Doe ran home and told his brother Timmy that Defendant and Two Eagles were "starting shit" and asked for Timmy's help to back him up in a fight. ECF No. 110, ¶ 5. Timmy agreed and started getting dressed. Doe grabbed a baseball bat from the house and returned to the scene by himself on foot.

As Doe came back to the scene, he coincidentally ran into a group of men in a white Ford Explorer. Doe knew the driver, Carlos Willeto. Doe told the group that some guys took his girlfriend, were trying to rape her, and asked for a ride to the overlook to confront them. Willeto and his group agreed, and Doe hopped on the Ford's footboard, which is the narrow step fitted under the side door. Once Wiletto's Ford climbed the overlook, Doe jumped off the footboard and ran towards the Tahoe with the baseball bat in hand.

Defendant and Two Eagles were trying to load C.Y. into the Tahoe. Once they saw Doe coming upon them with the baseball bat, they left C.Y. and drove off. Doe threw a rock at the Tahoe, shattering its rear window. Defendant believed that this was gunshot. Defendant and Two Eagles traveled a short distance, about 200 yards, to Defendant's house. Two Eagles stopped his car, looked back, and saw Doe strike C.Y. with what looked like a small baseball bat. Once they arrived at Defendant's home, Defendant grabbed a handgun and told his two sisters to call the Crownpoint Police Department. According to Federal Bureau of Investigation Special Agent Aaron Carp, Two Eagles apparently did not

want to return to the scene, but he drove Defendant there anyway because Defendant was armed and made Two Eagles feel threatened.

Doe had returned to Willeto's group and asked for help loading C.Y. into the Explorer so they could, according to the Government, transport C.Y. to get her help for her injuries. Although the timeframe is not entirely clear, as the men went to the rear of the Explorer, the Tahoe returned to the overlook. Defendant witnessed Doe and Wiletto's group loading C.Y. into the Explorer. Knowing about C.Y.'s "mental state" and head wound, Defendant fired his weapon "as he [saw] they [were] about ready to take off" in an attempt "to disable the vehicle." *Id*. 11:22-23, 25 – 12:1. Defendant fired three rounds from more than 50 yards away. One of the bullets ricocheted from the vehicle and struck Doe in his chest. The driver of the Explorer crashed into a tree, and the remaining occupants in the car ran off on foot. Doe died shortly after.

In testimony between the prosecutor and Special Agent Carp at a motion hearing, Carp described the moment of the shooting as follows:

Q: So, when Two Eagles and the defendant drove back up the hill, what happened next?

A: Well, they started going back up the hill, but Mr. Two Eagles stopped the vehicle, at which point Brandon Charley exited the vehicle and started firing in the direction of [Doe].

Q: As [Doe] was trying to get – had [Doe] been able to get C.Y. into the vehicle?

A: No. She was on the ground. He had entered the vehicle with the other

individuals and they started driving away from the scene. And that's when

the shooting occurred.

Q: So they had not taken her with them at that point, she was still on the

ground, C.Y.

A: She was left on the ground, correct.

ECF No. 54, 15:21-25 – 16:1-9.

After firing the weapon, Defendant got back into the Tahoe and fled, leaving Doe and C.Y. at the scene. Several people in the area overheard the gunshots and called the police. Officers went to Defendant's house and encountered a crowd of people. Defendant was aggressive with police and did not provide a justification to police for shooting Doe. Officers found no gun, but they did find .357 ammunition inside of another gun owned by Defendant's mother and also found Defendant's fingerprints on a box of ammunition. When officers went to the overlook they found three recently fired .357 casings in the area witnesses described as Defendant's shooting position. Doe was found dead near the side of the road, and close by to C.Y., who was severely intoxicated.

C.Y. told emergency personnel that a man with a neck tattoo raped her.[1] C.Y. was then transported to a hospital, where she refused a sexual assault examination and apparently was so intoxicated that she did not remember the events surrounding the

---

[1] The Government points out that neither Defendant nor Doe had a neck tattoo, but that Two Eagles did have a neck tattoo.

shooting. A nurse overheard C.Y. say in a telephone call that she was "almost raped" rather than "raped."

Five days later, C.Y. told Agent Carp that Doe raped and beat her. Carp wrote in his investigation notes that C.Y. said that "[Doe] picked her up, put her under a tree, and raped her," and "hit her with a small rock[.]" ECF No. 54 at 26:22-25 – 27:1-2.  A few days later, however, C.Y. told Agent Carp that Defendant in fact raped her. And then a few days later, she changed her story yet again, maintaining that Doe raped her. At some point in 2019 when law enforcement officers again asked C.Y. about her assailant's identity, she answered that she did not know.

## Legal Standard

The law "makes it a crime to unlawfully kill a human being with malice aforethought." 10th Cir. Crim. Pattern Jury Instructions No. 2.52 (2011 Ed. Updated Feb. 2018). However, "[a] person is entitled to defend [himself] [another person] against the immediate use of unlawful force. But the right to use force in such a defense is limited to using only as much force as reasonably appears to be necessary under the circumstances." *Id*. at No. 1.28 "A person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response." *United States v. Barrett*, 797 F.3d 1207, 1218 (10th Cir. 2015) (quoting *United States v. Toledo,* 739 F.3d 562, 567 (10th Cir.2014)). "A defendant's burden of production to warrant a self-defense instruction is not onerous." *Barrett*, 797 F.3d at 1218. (internal quotation marks and citation omitted). "It requires only that there be evidence sufficient for a reasonable jury to find in his favor." *Id.* Because the defense of self-defense or

defense-of-another is an affirmative defense that "the government must disprove beyond a reasonable doubt, [] it follows that the defendant need only produce enough evidence to persuade the jury to have a reasonable doubt about whether the defendant acted in self-defense." *Id.* (citing *United States v. Corrigan,* 548 F.2d 879, 883 (10th Cir.1977)) (other citation omitted). "[S]elf-defense require[s] that the defendant reasonably believe his adversary's unlawful violence to be almost immediately forthcoming." *United States v. Thomas*, 752 F. App'x 606, 609 (10th Cir. 2018) (quoting 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.4(d) (2017)). "If supported by the evidence and the law, a criminal defendant is entitled to jury instructions concerning his theory of defense." *United States v. Butler*, 485 F.3d 569, 571 (10th Cir. 2007).

Analysis

### i. *Self-Defense*

The Court excludes Defendant's proposed defense of self-defense because it fails as a matter of law. As noted earlier, "self-defense require[s] that the defendant reasonably believe his adversary's unlawful violence to be almost immediately forthcoming." *Thomas*, 752 F. App'x 606 at 609. There is no evidence that Doe or Wiletto's group threatened Defendant with imminent death or great bodily injury at the moment Defendant fired his weapon. Defendant did believe that Doe shot out the Tahoe's window with a gun. But rather than calling the police, Defendant's own evidentiary proffer shows that several minutes passed as Defendant went home, grabbed a gun, and then return to scene, making him the aggressor. Nobody initiated or returned gunfire at Defendant and Doe was, in fact, unarmed as Defendant shot him standing from a position of safety some 50 yards away. It

therefore is irrelevant that Defendant and Doe had earlier scuffled and Doe brandished a bat and then broke the Tahoe's windshield with what Defendant thought was gunshot, because at the time Defendant fired he was faced with no imminent threat of death of bodily injury. Defendant's evidentiary proffer also shows that he fired at Doe and Wiletto's group as they were attempting to load C.Y. into the Explorer and "[were] about ready to take off," suggesting that they were leaving the scene. Even viewing the evidence in the light most favorable to Defendant, no rational factfinder could conclude that he was faced with imminent danger necessitating the use of deadly force. Defendant is therefore not entitled to have a self-defense instruction presented to a jury and the Government's motion is **GRANTED**.

ii. *Defense-of-Another*

Viewing the evidence in the light most favorable to Defendant and mindful that his burden of production is not onerous, the Court believes that a rational factfinder could conclude that Defendant had an objectively reasonable belief that C.Y. was in danger of death or serious bodily injury immediately preceding or during the moment he fired his gun. Two Eagles reported that he and Defendant saw Doe beating up C.Y. Defendant proffered that C.Y. was "dazed, confused and bleeding from the head," when Defendant and Two Eagles encountered her. Defendant heard C.Y. say that she had been raped. Doe came at Defendant and Two Eagles with a bat, and then shattered the Tahoe's back windshield. Defendant believed, even if mistakenly, that this was gunshot and that Doe was armed with a gun. Once at the overlook, he saw Doe and Wiletto's group loading C.Y. into the Explorer. Defendant proffers that the combination of C.Y.'s earlier statement that

she had been raped and her visible head injury compelled him to fire his weapon in C.Y.'s defense because he observed Doe and Wiletto's group trying to load C.Y. her into the Explorer and he wanted to disable the vehicle. At this stage, the Court finds sufficient his evidentiary proffer combined with his representation that his trial testimony will establish a defense-of-others instruction.

The Government argues that Defendant's defense-of-another claim fails because, among other things, Defendant said in a pleading that at he "will not testify that he knew the rapist was John Doe." ECF No. 126 at 4. Rather, Defendant will testify that he "was informed by C.Y. that she could have been raped," and that he "may have assumed" that Doe raped C.Y. in the heat of the moment. *Id*. But at this stage Defendant's "burden of production to warrant a self-defense [or defense-of-another] instruction is not onerous, … notwithstanding that the evidence may be contradictory and not overwhelming." *Toledo*, 739 F.3d at 568.

The Government also made a jury nullification argument, voicing its fear that if Defendant is permitted to present "false evidence about Doe" the jury "will be biased against Doe and the risk of nullification will be great." ECF No. 110 at 6. In its reply brief, the Government amplified these concerns, arguing that if Defendant cannot establish a pretrial prima facie showing to develop a theory of defense-of-another, the "injection of the purported rape would deprive the United States and the victim's family of a fair trial," and that "[n]o instructions could remedy the previous admission of such unfairly prejudicial claims against the victim." ECF No. 151 at 3. The Court disagrees for the following reasons.

First, as noted earlier, Defendant is entitled to develop a defense through his trial testimony, so the harm to Defendant of excluding his evidence outweighs prejudice to the Government. *See Tapaha*, 2016 WL 9725218 at *6. Second, the Court cautions Defendant that he must not make representations unsupported by the evidence. Defendant's "right to present a defense is not without limits," *United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004), and Defendant is cautioned against making unsubstantiated allegations that shift the focus from Defendant to the decedent, who is not on trial. Third, although the Government says that no jury instruction could erase the prejudicial effect of implicating Doe, courts presume that jurors follow the court's instructions. *See United States v. Hargrove*, 911 F.3d 1306, 1319 (10th Cir. 2019). If appropriate, the Court can give curative instructions to the jury that it may only consider Defendant's belief that Doe possibly assailed C.Y. to explain why Defendant used deadly force.

Defendant may inject the issue of defense-of-another into *voir dire*, opening statements, witness examinations, and elsewhere in trial. *See Tapaha*, 2016 WL 9725218 at *1 (permitting same procedure). At trial, the Court will exercise its gate-keeping function and evaluate whether Defendant's testimony warrants a defense-of-another instruction being submitted to the jury, but until then the Court **RESERVES RULING** on the motion.

### 2. Doe's Prior Bad Acts

The Government moves under Fed. R. Evid. 404(a) to exclude "any reference to prior bad acts of John Doe from voir dire, opening statement, witness examinations or otherwise injecting the issue into trial." ECF No. 110 at 6. The Government provides few details, but says that Doe had a non-violent criminal history for substances abuse charges,

and that "[n]one of these priors would inform Defendant's decision to resort to deadly force against Doe." *Id*. In his response brief, Defendant says that he "will not … introduce testimony regarding John Doe's previous charges related to substance abuse … unless made probative and relevant by … the government." ECF No. 122 at 5. Noting the parties' agreement on the issue, the motion is **GRANTED**.

### 3. Hearsay Statements

The Government moves to prohibit Defendant from "attempt[ing] to elicit out-of-court statements related to the purported rape of C.Y." from "other witness's prior statements to law enforcement." ECF No. 110 at 8-9. The Government does not identify specific witnesses or the content of their statements. In response, Defendant says that he has "no intent of eliciting any such hearsay which is why all known witnesses have been put on Defendant's witness list and for whom compulsory process will compel their attendance at trial." ECF No. 122 at 5. The Court is without enough information to meaningfully rule on the admissibility of hearsay statements and accordingly **RESERVES RULING** on the issue.

### 4. Impeachment of Defendant with His Silence

If at trial Defendant takes the stand and presents an exculpatory narrative, the Government wants to comment that Defendant did not come forward with such narrative to the police after first speaking to them.[2] According to the Government, immediately after

---

[2] In its motion, the Government wants permission to impeach "any" witness with their non-custodial silence. ECF No. 110 at 9. However, the Government provided no legal analysis concerning impeachment of any other witness besides Defendant. So the Court limits its ruling to Defendant's silence and will reserve ruling on the admissibility of other witnesses' silence.

the alleged murder, officers went to Defendant's mother's house. Officers supposedly spoke to Defendant in a non-custodial, voluntarily setting and Defendant "never mentioned self-defense, C.Y., rape, or provided his version of the events." The Government contends that Defendant's silence is permissible impeachment evidence.

In response, Defendant says he affirmatively invoked his right to remain silent outside of his house. Relying on the police report, Defendant says that about an hour after the alleged murder occurred, officers found Defendant and Two Eagles at Defendant's home. Officers first handcuffed Two Eagles, who identified Defendant as Brandon Charley to officers. At that point, officers "began communicating" with Defendant (Defendant provides no details of this communication), and then Defendant assumed the position of arrest, was handcuffed, placed in a police car, and given *Miranda* warnings.[3] According to Defendant, he invoked his right to remain silent. About two months later, Defendant again invoked his right to remain silent in an FBI office in Gallup and provided no statement to law enforcement officers.

The parties seem to be referring to different events: Defendant says police apprehended him at his house, whereas the Government points to Defendant's silence while he was at his mother's house. Because of these differing accounts, the Court must reserve ruling on the issue.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966) established that certain safeguards that must be afforded to suspects, including the right to remain silent and to have counsel present during a custodial interrogation.

<u>Legal Standard</u>

The privilege against self-incrimination comes from the Fifth Amendment's declaration that "[n]o person … shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The privilege permits a person to refuse to answer questions, in formal or informal proceedings, where the answers might be used to incriminate him in future criminal proceedings." *United States v. Ramos*, 685 F.3d 120, 126 (2d Cir. 2012) (citing *Minnesota v. Murphy,* 465 U.S. 420, 426 (1984)). However, the Supreme Court has emphasized that the privilege against self-incrimination is not self-executing. To claim its protection, a suspect's silence does not invoke the privilege's protections. *See Salinas v. Texas*, 570 U.S. 178, 181 (2013) (although "no ritualistic formula is necessary in order to invoke the privilege," to "simply stand[ ] mute," is insufficient) (quoting *Quinn v. United States,* 349 U.S. 155, 164 (1955)). However, if a defendant is in custody and has been given *Miranda* warnings, then using the defendant's post-arrest, post-*Miranda* silence violates due process. *See Doyle v. Ohio*, 426 U.S. 610, 618-619 (1976) (once *Miranda* warnings have been given, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."). Simply stated, a prosecutor cannot impeach a defendant at trial with his post-*Miranda* silence. *See id.* at 617-618.

But regardless of whether a defendant is in custody, a prosecutor may impeach a defendant with his *pre*-Miranda silence. *See Salinas,* 570 U.S. at 188 & n.3 (noting that the *Doyle* rule "does not apply where a suspect has not received the [*Miranda*] warnings' implicit promise that any silence will not be used against him.") (citing *Jenkins v.*

*Anderson*, 447 U.S. 231, 240 (1980)); *Fletcher v. Weir*, 455 U.S. 603, 607 (1982) (holding that prosecutor's use of post-custody, pre-*Miranda* silence to impeach the defendant at trial did not violate due process); *Branch v. Sec'y, Fla. Dep't of Corr.*, 638 F.3d 1353, 1355 (11th Cir. 2011) ("[T]he government may comment on a defendant's silence when it occurs after arrest, but before *Miranda* warnings are given.") (citation omitted); *Bland v. Sirmons*, 459 F.3d 999, 1023 (10th Cir. 2006) (rejecting habeas petitioner's claim that the prosecutor's reference to petitioner's "pre-arrest and post-arrest, pre-*Miranda* silence" violated due process).

Analysis

As these cases make clear, whether Defendant received *Miranda* warnings is significant. But unfortunately, is far from clear if the parties are even discussing the same event. The Government says that officers voluntarily talked with Defendant at his mother's house, whereas Defendant says he was arrested and *Mirandized* after exiting his house. Simply put, under *Doyle*, if Defendant received *Miranda* warnings – whether at his mother's house or his house – any silence thereafter is inadmissible to impeach Defendant because it would be "fundamentally unfair" to use his silence against him after officers informed him of his right to remain silent. [4]  *See Doyle*, 426 U.S. at 618. But under *Fletcher* and *Jenkins*, if Defendant did not receive *Miranda* warnings, he may be impeached at trial with his silence. *See Fletcher*, 455 U.S. at 606-07; *Jenkins*, 447 U.S. at 240. Until the Court

---

[4] If Defendant's version of events is accurate – that officers arrested and *Mirandized* him after he exited his house – then Defendant's post-arrest, post-*Miranda* invocation of his right to remain silent is impermissible impeachment evidence.

hears from a witness with personal knowledge about the issuance of *Miranda* warnings, or the Government makes an evidentiary proffer, the Court **RESERVES RULING** on the motion.

### 5. Defendant's Failure to Present Evidence

The Government asserts that "[i]f Defendant argues … that he acted in self-defense or defense of another, then the United States may argue his failure to present evidence of the claim. Several people observed the events at issue, so an argument regarding the absence of evidence would not imply a failure of [D]efendant to testify." ECF No. 12. The Court interprets this argument to mean that the Government, to rebut Defendant's self-defense/defense-of-another claim, will argue that Defendant lacked corroborating eyewitnesses, which is not aimed at Defendant's failure to testify, but rather about the lack of corroboration.

<u>Legal Standard</u>

"In *Griffin v. California,* 380 U.S. 609 (1965), the Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits a prosecutor from commenting on a defendant's invocation of his right not to testify." *United States v. Rahseparian*, 231 F.3d 1267, 1272–73 (10th Cir. 2000) (some citations omitted). This is known as the "*Griffin* rule." *See id*. The prosecution has the burden to prove every element beyond a reasonable doubt and may not shift the burden of proof to the defendant to prove his innocence. *See In re Winship*, 397 U.S. 358, 364 (1970); *Mullaney v. Wilbur*, 421 U.S. 684, 702-03 (1975), and thus "[i]t is improper for a prosecutor to comment on a defendant's decision to refrain from testifying at trial." *Battenfield v. Gibson*, 236 F.3d 1215, 1225

(10th Cir. 2001) (citing *Griffin*, 380 U.S. at 615). "If a prosecutor's remarks 'concern matters that could have been explained only by the accused, ... [they] give rise to an innuendo that the matters were not explained because [petitioner] did not testify' and, thus, amount to indirect comment on the defendant's failure to testify." *Battenfield*, 236 F.3d at 1225 (quoting *Pickens v. Gibson,* 206 F.3d 988, 999 (10th Cir.2000)) (other citation omitted). "Simply put, the question is whether the language used [by the prosecutor] was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." *Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006) (internal quotation marks and citations omitted). However, "[t]he prosecution is 'free to comment on a defendant's failure to call certain witnesses or present certain testimony.'" *United States v. Christy*, 916 F.3d 814, 830 (10th Cir. 2019) (quoting *Battenfield*, 236 F.3d at 1225); *Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999) ("Although a prosecutor may not comment on a defendant's decision to refrain from testifying, he is otherwise free to comment on a defendant's failure to call certain witnesses or present certain testimony.") (internal citation omitted).

Analysis

The Government may permissibly point out that Defendant has failed to call certain witnesses, and/or that Defendant has failed to present certain corroborating testimony from eyewitnesses at the scene. "The prosecutor may freely refer to the fact that the defense has failed to rebut a natural inference that may be drawn from the facts in evidence or failed to corroborate the claims of his witnesses." *Garrison v. Workman*, No. 07-CV-542-JHP-TLW, 2011 WL 3842022, at *14 (N.D. Okla. Aug. 29, 2011), *aff'd*, 509 F. App'x 720 (10th

Cir. 2013) (citing *United States v. Rahseparian,* 231 F.3d 1267, 1273–74 (10th Cir.2000)).

The Government has indicated that several eyewitnesses were present at the alleged

murder. These witnesses' personal observations are clearly not facts that could only be

explained by Defendant. *See Battenfield*, 236 F.3d at 1225 (prosecutor impermissibly

comments on certain facts if those facts could only have been explained by the non-

testifying defendant); *United States v. Gomez-Olivas*, 897 F.2d 500, 503 (10th Cir. 1990)

("As long as evidence can be solicited other than from the mouth of the accused, it is proper

to comment upon the failure of the defense to produce it."). And if the witnesses' testimony

does not corroborate Defendant's version of events, the Government is free to comment on

the lack of corroboration. *See id.* ("[l]ack of corroboration is a permissible inference to

argue."); *Rahseparian*, 231 F.3d at 1273–74 (prosecution is allowed "considerable latitude

in commenting on evidence and arguing inferences therefrom[.]") (citing *Gomez–Olivas,*

897 F.2d at 503)) (other citations omitted). The Government's motion is **GRANTED**.

### 6. Impeachment with Prior Rape Allegation

The Government wants to impeach Defendant with a 2017 allegation that Defendant

tried to rape his common-law wife. According to the Government, Albuquerque Police

Department officers arrested Defendant after his girlfriend told officers that Defendant

choked her, tried to digitally penetrate her over her protestations, and prevent her from

calling for help. Defendant was apparently charged in state-court with attempt to commit

criminal sexual penetration, but his charges were dismissed without prejudice following a

probable cause determination. The Government believes that such evidence is admissible

under Fed. R. Evid. 404(b) and the "specific contradiction doctrine."[5] Government argues that the evidence of the alleged attempted rape is relevant to show absence of mistake – that Defendant's defense of C.Y. was not "a reasonable mistake of fact, considering Defendant's attempt to rape a woman only months earlier." ECF No. 101 at 8.

Defendant points out that this charge never resulted in a conviction, and that Defendant's common-law wife would deny at trial that any attempted rape occurred.

<u>Rule 404(b) Legal Standard</u>

Evidence of other crimes or bad acts may not be offered to prove bad character or conformity with prior bad acts. Fed. R. Evid. 404(b)(1). Evidence of other crimes, however, may be offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

A court must consider four requirements for admission of evidence under Rule 404(b): (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the evidence's probative value must not be substantially outweighed by its unfairly prejudicial effect; and (4) the trial court must give jury instructions on the proper purpose of the evidence if requested. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Fitzherbert*, 13 F.3d 340, 343 (10th Cir. 1993). The party seeking its admission "must precisely articulate the purpose for which the evidence is offered, and the trial court must specifically identify the purpose for which it is admitted." *United States*

---

[5] Defendant believes the Government is attempting to improperly introduce this evidence under Fed. R. Evid. 608(b), but the Court does not agree because the Government does not cite or rely on that provision.

*v. Hardwell*, 80 F.3d 1471, 1488 (10th Cir. 1996). To establish relevance, the moving party must demonstrate "a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." *United States v. Cuch*, 842 F.2d 1173, 1176 (10th Cir. 1988) (quoting *United States v. Biswell*, 700 F.2d 1310, 1317-18 (10th Cir. 1983). The prior act and charged offense must be similar. *United States v. Brooks*, 736 F.3d 921, 940 (10th Cir. 2013).

Federal Rule of Evidence 403 also permits a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

<u>Rule 404(b) Analysis</u>

The Government has failed to carry its burden to demonstrate the probative value of the alleged rape evidence. Defendant is not charged with a rape crime. He is charged with first-degree murder of Doe, and therefore his alleged prior attempted rape of his common-law simply has no bearing on the crime charged. *See Montelongo*, 420 F.3d at 1173 (noting that to determine if evidence is relevant, the court must look to the elements of the offense). Admittedly, the evidence is somewhat relevant to Defendant's defense-of-another claim. But that relevance is marginal at best. And any probative value of the rape allegation is substantially outweighed by a danger of unfair prejudice, since it would signal to the jury that Defendant has a criminal propensity. The evidence would also have the undesirable effect of confusing the issues and wasting time, especially since Defendant has represented that his common-law wife will deny the allegation at trial, thereby setting-up

a mini-trial collateral to the merits. The Government's motion to admit the 2017 attempted rape allegation under Rule 404(b) is **DENIED**.

Specific Contradiction Legal Standard

The Government also argues that it is entitled to cross-examine Defendant about the 2017 charge or otherwise ask Defendant about it using extrinsic evidence under the "specific contradiction doctrine." Under Federal Rule of Evidence 611(b), cross-examination "should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed. R. Evid. 611(b). "When an accused testifies in his own case-in-chief, he waives his privilege against self-incrimination, a waiver that subjects him to cross-examination on all 'relevant facts.'" *United States v. Crockett*, 435 F.3d 1305, 1312–13 (10th Cir. 2006) (quoting *Johnson v. United States,* 318 U.S. 189, 195 (1943)). "In particular, when a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact." *Crockett*, 435 F.3d at 1313 (citing *Walder v. United States,* 347 U.S. 62, 65 (1954)). "This is so even if the evidence elicited by the prosecution ordinarily might be collateral or otherwise inadmissible." *Crockett*, 435 F.3d at 1313. *See United States v. Cerno,* 529 F.3d 926, 944 (10th Cir.2008) ("If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying."). "Evidence admitted to contradict a witness's testimony, rather than to prove action in conformity with a character trait, is not subject to exclusion under Federal Rule of Evidence 404." *Burke v. Regalado*, 935 F.3d 960, 1024 (10th Cir. 2019) (citation omitted).

However, a limiting instruction may nonetheless be appropriate. *Id*. And it remains true that "[e]vidence contradicting a witness's statement is subject to exclusion under Federal Rule of Evidence 403." *Id*.

Specific Contradiction Legal Analysis

The Government claims that the attempted rape allegation will be relevant to Defendant's direct testimony that he fired his weapon to stop a rape in progress. However, Defendant's testimony about why he fired his weapon is simply his version of events – the attempted rape evidence would not "specifically contradict[] [Defendant's] testimony," concerning why he fired his gun at Doe. *Cerno,* 529 F.3d at 944. Plus, the prosecution would encounter problems of proof at trial: Defendant has represented that his common-law wife will take the stand and deny the allegation of the attempted rape, which was judicially dismissed. Her testimony and the dismissal would guarantee a mini-trial on a irrelevant matter that would not specifically contradict Defendant's testimony in the first place. This necessitates the exclusion of the evidence under Rule 403 and therefore the Government's motion is **DENIED**.

**7. Excited Utterances**

The Government moves for permission to present in its case-in-chief three "excited utterances" made by Doe before he died: (1) Doe's statement to his brother Timmy that Doe left a girl up at "the edge" because "Brandon Charley and Wesley Charley[6] were

---

[6] According to the Government, Wesley Charley is Defendant's brother and "[i]t is unclear if Wesley originally accompanied Defendant or Doe was mistaken about the identity of the driver of the Tahoe." ECF No. 110 at 13 & n.2.

starting shit"; (2) Doe's request to Carlos Wiletto for help because "some guys were trying to rape his girlfriend"; and (3) Doe's statement to Leon McDonald that some guys "took his girlfriend." ECF No. 110 at 13. The Government contends that all three of these statements are excited utterances excepted from the rule against hearsay. Defendant does not oppose the admission of this evidence and says that the statements should in fact be admitted. Noting the parties' agreement, the motion is **GRANTED**.

### 8. References to Potential Punishment

The Government moves to exclude all direct or indirect reference to, or evidence of, the sentence that might be imposed if Defendant is convicted of the charged offenses. Defendant does not oppose the motion. Noting the parties' agreement on the issue, the motion is **GRANTED**.

### 9. Autobiographical References to the Jury

The Government moves for an order prohibiting defense counsel from speaking (directly or indirectly) to the venire panel or to the seated jury at any time during the case about the defense counselors' past employment with the United States Attorney's Office. Defendant does not oppose the motion, so it is accordingly **GRANTED**.

### 10. Casting Doubt on the Quality of the Investigation

The Government moves for an order prohibiting Defendant from offering evidence about the purported deficient quality of the pretrial investigation. The Government asserts that a defendant is "not allowed to engage in unfounded speculation that the government's investigation was 'shoddy' or 'slanted.'" ECF No. 110 at 17 (quoting *United States v. McVeigh*, 153 F.3d 1166, 1192) (10th Cir. 1998)).

In response, Defendant says that Special Agent's Carp's "brazen bias" towards Defendant is ripe for cross-examination and he intends to ask Carp "as to why he never investigated the rape allegation; why he didn't collect critical evidence from the scene; and why he failed to forensically test critical evidence." ECF No. 126 at 6. Defendant also intends to attack Carp's investigative finding that Defendant shot from roughly 50 yards. Finally, Defendant theorizes that a ricochet bullet killed Doe and that forensic testimony will support that theory. He intends to cross-examine Carp about why the Government "did not do a forensic analysis as to that possibility [the possibility that the fatal bullet ricocheted]." *Id*. at 6-7. Defendant implies that Carp turned a blind-eye to mitigating facts and evidence because he wanted to secure a first-degree murder conviction.

<u>Legal Standard</u>

"[T]he facts surrounding the government's investigation may become relevant only when they would affect the reliability of a particular piece of evidence." *United States v. Perrault*, No. CR 17-02558-MV-1, 2019 WL 1375666, at *1 (D.N.M. Mar. 26, 2019) (quoting *McVeigh*, 153 F.3d at 1192)). "The quality or bias of the government's investigation that produces the evidence that is submitted to the jury may affect the reliability of the evidence, and would therefore be relevant information." *Perrault*, 2019 WL 1375666 at *1. (citing *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (other citation omitted); *Lowenfield v. Phelps*, 817 F.2d 285, 291–92 (5th Cir. 1987) (other citation omitted). "It may bear on the quality of the government's witnesses and, perhaps more importantly, the weight to be given to evidence produced by [the] investigation." *Perrault*, 2019 WL 1375666 (quoting *Sager*, 227 F.3d at 1145). "Evidence that testifying

agents may have engaged in misconduct may also be admissible to show motive or bias." *Perrault*, 2019 WL 1375666 (citing *United States v. Wilson*, 605 F.3d 986, 1006–07 (D.C. Cir. 2010)). "However, such evidence is admissible if a defendant's 'proffered evidence ..., on its own or in combination with other evidence in the record, ... show[s] a nexus between the crime charged and the asserted' theory." *Perrault*, 2019 WL 1375666 at *2 (quoting *United States v. Meisel*, 875 F.3d 983, 1002 (10th Cir. 2017)).

<u>Analysis</u>

Defendant may cross-examine Carp "as to why he never investigated the rape allegation; why he didn't collect critical evidence from the scene; and why he failed to forensically test critical evidence." ECF No. 126 at 6. He may also question Carp's findings about the gunshot distance and why investigating officers did not conduct a forensic analysis concerning the ricochet bullet theory. Cross-examination of Carp regarding his investigative findings and methods are proper subject matters for examination and therefore the Government's motion to preclude inquiry into these matters is **DENIED**.

But the propriety of cross-examination into Carp's alleged "brazen bias" presents a different question. Of course, "bias is always a relevant subject for cross-examination." *United States v. Lin,* 101 F.3d 760, 768 (D.C. Cir. 1996). However, Defendant "must have a reasonable basis for asking questions on cross-examination which tend to … degrade the witness and thereby create an unfounded bias…." *United States v. Sampol,* 636 F.2d 621, 658 (D.C. Cir. 1980). "Counsel therefore must demonstrate that "the proposed line of cross-examination follow[s] a lead reasonably suggested by other facts in evidence." *United States v. McCallum*, 885 F. Supp. 2d 105, 117 (D.D.C. 2012) (quoting *Lin*, 101 F.3d at

768)). In other words, cross-examination "[w]ithout additional evidence of wrongdoing beyond bald assertions" and "based on unproven allegations" is impermissible. *Wilson*, 605 F.3d at 1005. Here, Defendant claims that Carp acted with "brazen bias" and makes the serious accusation that he went hunting for evidence to secure a first-degree murder conviction and ignored evidence that would have supported a lesser charge. But the pretrial record shows that these allegations are bald assertions. The Court **RESERVES RULING** on cross-examination into Carp's alleged bias until Defendant sets forth an evidentiary foundation that establishes a nexus between Carp's alleged bias and the reliability of evidence turned-up in the government investigation.

### 11. Defendant's Rule 17(b) Motion and the Government's Motion to Exclude Proposed Defense Witnesses

Defendant originally submitted a list of 33 proposed trial witnesses. *See* ECF No. 108. The Government moved to exclude 16 of these witnesses, claiming that they have no relevant information to provide at trial. Defendant eventually withdrew his request for certain witnesses and following a motion hearing on the matter and pursuant to parties' agreement, the Court entered an order (1) granting Defendant's request for service of process on Witnesses 1-16 and 30-31; (2) denying process on Witnesses 19-25, 27-28, and 32-33; and (3) reserving ruling on Witnesses 17-18, 26, and 29. *See* ECF No. 132.

The four witnesses still in contention between the parties are Dr. Patrick Connor, Ana Sanchez, Dr. Thomas Martin, and M. Devore. The first three were all employed at the Cibola General Hospital. M. Devore was employed by the Crownpoint Police Department.

The Government moves to exclude these witnesses from testifying under Fed. R. Evid. 402 and 403, arguing that they have no relevant information to provide.

<u>Legal Standard</u>

"Rule 17(b) allows indigent defendants to subpoena witnesses whose presence is a 'necessity' to an 'adequate defense.'" *United States v. Cunningham*, 705 F. App'x 906, 910 (11th Cir. 2017) (quoting Fed. R. Crim. P. 17(b)). As the Tenth Circuit has explained, "[b]y virtue of the 'necessity' requirement, a defendant's burden under Rule 17(b) is not light." *United States v. Pursley*, 577 F.3d 1204, 1230 (10th Cir. 2009). "Mere allegations of materiality and necessity are not sufficient to establish that a witness is necessary to an adequate defense." *Id*. (citation omitted). "To show 'necessity,' a defendant must establish that the witness's testimony is 'relevant, material, and useful.'" *Id*. (quoting *United States v. Hernandez–Urista,* 9 F.3d 82, 84 (10th Cir.1993). The defendant must demonstrate "particularized need." *Pursley*, 577 F.3d at 1230.

<u>Analysis</u>

*i. Dr. Patrick Connor*

Defendant says that Dr. Connor will testify that he admitted C.Y. to Cibola General Hospital following the alleged rape, originally diagnosed her with a "concussion, and alleged sexual assault," and was going to treat her for sexually transmitted diseases. ECF No. 114 at 3. Dr. Connor will testify that C.Y. disrobed so that her clothing could be collected as evidence by the Crownpoint Police Department and that he ordered a CT examination of her head trauma. Finally, Dr. Connor will testify that C.Y. was discharged

with a diagnosis of "concussion and brain injury" with a special instruction for her to "go see [SANE]." *Id.*

Dr. Connor's testimony is relevant evidence of the existence C.Y.'s injuries, given C.Y.'s own contradictory statements concerning her alleged rape. Therefore, the doctor's testimony lends corroboration to Defendant's version of events and is therefore relevant and useful. Moreover, the witness's testimony will shed light on the severity of C.Y.'s alleged injuries, which in turn bears on whether Defendant reasonably believed that it was necessary to use deadly force under the circumstances. The Court permits Defendant to subpoena the witness and **DENIES** the Government's motion to the exclude the witness from trial.

### ii. *Ana Sanchez*

Ana Sanchez was an Emergency Room Technician at Cibola General Hospital. Defendant wants to admit Sanchez's two hearsay statements: (1) Sanchez overheard C.Y. tell her sister, "I almost got raped" and (2) Sanchez told "M. Devore from crownpoint police department about patient's assault. [S]he took patient's information and states she will inform officer, she will then inform [Cibola General Hospital] if an officer is going to come out here to speak with patient." According to Defendant these statements will "corroborate C.Y.'s statement to Mr. Charley that she was a rape victim," which is relevant to his defense-of-another defense.

The Court will permit Defendant to subpoena Sanchez, but the Court will reserve ruling on the admissibility of her proffered statements because at this stage there are too many unknown variables. First, trial testimony from Sanchez that she overheard C.Y. say

she was "almost raped," and that she told "M. Devore ... about [C.Y.'s] assault," are hearsay. *See* Fed. R. Evid. 801(c). The Government lodged a general hearsay objection, but unfortunately neither party engaged in any meaningful analysis explaining the admissibility of the statements. Therefore, there is a hearsay objection on the record but Defendant, as the proponent of the evidence in this instance, made no attempt to justify the statements' admission. The Court permits Defendant to subpoena Sanchez, but **RESERVES RULING** on the admissibility of her testimony.

### iii. <u>Dr. Thomas Martin</u>

Defendant wishes to admit the testimony of Dr. Thomas Martin, a radiologist at Cibola General Hospital, who will testify about the results of the CT scan performed on C.Y. Defendant says that the evidence is "critical to establish that C.Y. suffered a concussion as a result of [Doe's] brutal beating of her." ECF No. 114. Dr. Martin's testimony is relevant evidence of the severity of C.Y.'s injury and will be useful in determining whether Defendant reasonably believed that he needed to use lethal force in supposedly stopping Doe from harming C.Y. Accordingly, the Court allows Defendant to subpoena the witness and **DENIES** the Government's motion to exclude the witness from trial.

### iv. <u>M. Devore</u>

According to Defendant, M. Devore, an employee at the Crownpoint Police Department, received Ana Sanchez's call about the alleged sexual assault of C.Y. Defendant says that Crownpoint police "apparently ... ignored and disregarded," the report which amounted to "gross[] negligen[ce]." ECF No. 114 at 4. Defendant gives no details

beyond this single sentence. The Court permits Defendant to subpoena M. Devore, but **RESERVES RULING** on the admissibility of M. Devore's testimony. As explained in section B.10 above, inquiry into a government agent's investigatory misconduct is proper only if Defendant establishes a nexus between the alleged misconduct and the reliability of evidence turned-up in the government investigation.

### 12. Arguing Inappropriate Legal Standards

The Government asks the Court to "preclude Defendant from defining, analogizing, or otherwise misstating legal standards, such as 'beyond a reasonable doubt,'" saying such misstatements to the jury "are likely to confuse or mislead the jury and encroach on the Court's role in instructing on the law." ECF No. 110 at 19, 20. Defendant filed no response. The Court will instruct the jury on the meaning of relevant legal terms like "reasonable doubt." If Defendant provides the jury an inconsistent definition of legal terms – something that the Court considers highly unlikely – then the Court will take up the matter in a bench conference.

## C.  THE GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE 404(B) EVIDENCE

In its Rule 404(b) Notice, the Government proffered that it would submit evidence of three types of Defendant's bad acts: (1) evidence of two previous fights between Defendant and John Doe's family, as evidence of motive and intent to kill Doe; (2) the 2017 allegation that Defendant attempted to rape his common-law wife as evidence of absence of mistake; and (3) evidence that Defendant was arrested with a .357 Sig in 2010 as evidence of opportunity and possession. *See* ECF No. 101 at 1.

## 1. **Evidence of Family Feuds**

About 11 years ago, Defendant's and Doe's families got into a fight "in which Doe's family summarily defeated Defendant's family," says the Government. ECF No. 101. A few years later, the families fought again. The Government wishes to introduce witness testimony about the fights. Defendant does not oppose the admission of the evidence. Accordingly, the Government's requested is **GRANTED**.

## 2. **Prior Rape Allegation**

The parties conducted two rounds of briefing on the 2017 attempted rape allegation, one in the Government's omnibus motion *in limine* and the second in the Government's 404(b) Notice. The Government's request to introduce the evidence under Rule 404(b) is **DENIED** for the reasons explained in section B.6 above.

## 3. **Firearm Arrest**

Officers did not find the gun at issue. However, officers did find an empty gun case for a Springfield XD pistol, caliber .357 Sig, with a serial number of US339053. In December 2010, Albuquerque Police Department responded to a disturbance at an apartment complex where a woman told officers that Defendant repeatedly hit her with a bag. Officers arrested Defendant, searched the bag, and located a Sig .357 pistol with the same serial number, US339053.[7] The Government wishes to introduce the information about the firearm arrest concerning the same handgun to show that Defendant "had the

---

[7] The Court presents some facts taken from the Government's response to Defendant's *Daubert* motion, because that pleading sets forth the facts in greater detail.

opportunity to use such a firearm in the past and likely at the time of Doe's murder." ECF No. 101 at 9.

The Court's Memorandum Opinion and Order, ECF No. 166, governs the Government's request. If the parties do not stipulate to Defendant's possession of the firearm, then the Court will hear argument during a bench conference whether Defendant's 2010 arrest in connection with the firearm would unduly expose the jury to prejudicial and irrelevant information.

**D.     CONCLUSION**

**IT IS THEREFORE ORDERED that** the Government's "Omnibus Motion *in Limine*" **(ECF No. 110)** and the Defendant's objections noted in his Response to the Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) **(ECF No. 129)** are ruled on as explained herein.

**IT IS SO ORDERED**.


Judith C. Herrera
Senior U.S. District Judge